UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10944-RGS

FRANK SELIG

v.

MICHAEL J. ASTRUE, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION

MEMORANDUM AND ORDER ON
APPELLANT'S MOTION TO REVERSE
AND APPELLEE'S MOTION TO AFFIRM
THE DECISION OF THE COMMISSIONER

April 29, 2011

STEARNS, D.J.

Appellant Frank Selig seeks review of a final decision of the Commissioner that he is not disabled as defined by the implementing regulations of the Social Security Act. *See* 20 C.F.R. § 404.1520(g). The issue on appeal is whether substantial evidence supports the Commissioner's disability determination; more specifically, whether the Administrative Law Judge (ALJ) impermissibly disregarded the opinions of two of Selig's medical providers. The appeal is timely taken pursuant to 42 U.S.C. § 405(g).[1] The court heard the appeal on April 21, 2011.

---

[1] The ALJ's decision of July 29, 2009, became the final decision of the Commissioner when the Decision Review Board failed to review the hearing decision within the allotted time period.

# BACKGROUND

Selig applied for supplemental security income and disability insurance benefits on May 31, 2007.  The applications were denied on January 13, 2008, and again after an internal review on October 8, 2008.  Selig appealed.  On June 4, 2009, ALJ Stephen C. Fulton heard testimony from Selig and from Carl Barchi, a vocational expert (VE).  The ALJ issued his decision, unfavorable to Selig, on July 29, 2009.

Selig was born on June 14, 1958.  He is a high school graduate and has completed one year of college.  Selig worked for 20 years as a purchaser at a retail electronics company.  He has also worked in automotive sales and as a day laborer.

Selig has long struggled with alcohol addiction, diabetes, and hypertension, although his primary complaints involve bipolar disease and attention deficit hyperactivity disorder (ADHD).  Selig's reported symptoms include easy boredom, disorganization, fidgeting, frustration, impulsivity, forgetfulness, restlessness, distraction, and irritability.  Over time Selig has been prescribed a number of medications, including Prozac and Adderol.  As of the date of the hearing before the ALJ, Selig had been sober for almost two years.

For the most part, Selig stays in bed and watches TV.  Although he lives in a rooming house, he goes out for meals.  He does  his own laundry.  He is able to pay bills, count change, manage a savings account, and use a checkbook.  He goes to the

beach, the library, and AA meetings. He also volunteers at a senior center. Occasionally, he needs to be reminded of personal hygiene issues. He is alienated from his family members. He also reports having been fired from three different jobs because of his inability to adapt to the workplace.

Selig has been hospitalized several times because of intoxication or for treatment of his diabetes. He has been treated sporadically at the Lynn Community Health Center (Lynn Health) for anxiety and depression (as well as for alcoholism). On February 22, 2006, Selig presented to Dr. Rodd Stockwell, his primary care physician at Lynn Health, who noted that he was "unkempt." During a March 30, 2006 interview with Dr. Stockwell, Selig "denied having little interest or pleasure in doing things or feels down, depressed or hopeless." On September 6, 2006, Kristin Donovan, Selig's Lynn Health treating nurse, observed that he was extremely irritable and had a noticeable tic in his jaw. On November 30, 2006, Selig reported himself in a hopeful mood, feeling less irritable, and working more. On December 28, 2006, he reported feeling depressed because two of his friends had died. On January 25, 2007, Dr. Stockwell noted that Prozac was helping Selig cope, and Nurse Donovan observed that his health was improving.

In June of 2007, Selig told Nurse Donovan that he was having good and bad days, and that he had applied for social security disability. He also reported doing

volunteer work to stay busy, but complained of irritability. On June 25, 2007, Selig told Nurse Donovan that he could not work because of his mood shifts. Dr. Stockwell, who saw Selig two days later, noted no unusual anxiety or evidence of depression.

On October 10, 2007, Dr. Stockwell completed a Social Security disability evaluation of Selig for the Social Security Administration. Dr. Stockwell reported that he was unaware of any work-related limitations. He rated Selig's diabetes prognosis as stable, but declined to offer a psychiatric evaluation. On October 29, 2007, Selig sought an evaluation for ADHD at Lynn Health. Nurse Donovan prescribed a trial of Adderall, a psychostimulant medication to treat ADHD.

On November 18, 2007, Dr. Edwin Davidson, an independent state psychiatric consultant, performed a Psychiatric Review Technique (PRT) and Mental Residual Functional Capacity (MRFC). Dr. Davidson noted Selig's affective disorders and substance addiction issues. He nonetheless determined that Selig was not significantly limited in his ability to maintain an ordinary routine, to work in coordination with or proximity to others, to make simple work-related decisions, to ask simple questions or request assistance, and to get along with coworkers and peers. Finally, he found that Selig was not significantly limited in any of the adaptation categories: the ability to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public

transportation, and to be able to set realistic goals and make plans independently of others.

Dr. Davidson found Selig moderately limited in his ability to carry out detailed instructions, to maintain concentration for extended periods, to perform tasks always on schedule, to maintain regular attendance and be punctual, and to complete a normal workday and workweek without psychological interruption. He also found Selig moderately limited in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to maintain socially appropriate behavior.[2]

On January 28, 2008, Nurse Donovan's treatment notes state that Selig was not responding to his therapist and was no longer looking for part-time employment in anticipation of receiving Social Security benefits. On July 25, 2008, Selig participated in a group therapy session with Dr. John Weltner, a treating psychiatrist at Lynn Health. Treatment notes from the session indicate that Selig was engaged and supportive of other group members.

On January 9, 2008, Renee Marshall, a state examiner, completed a vocational

---

[2] By summarizing and condensing Dr. Davidson's report, the court does not mean to imply that Dr. Davidson did not answer every question called for by the PRT and MFRC, but instead does so to emphasize the points that it believes were the most influential in shaping the Commissioner's decision.

analysis. She noted that Selig's physical RFC was non-severe, while his mental RFC showed limitations in his ability to sustain concentration. She nonetheless concluded that Selig had no physical or mental impairments that would preclude his being able to perform unskilled work.

On April 21, 2009, Dr. Weltner and Nurse Donovan completed a second PRT. They concluded that Selig met listings 12.04 and 12.09 (affective disorders and substance addiction disorders). They believed that Selig's mood disorder and ADHD would interfere with his ability to maintain employment, particularly when accentuated by his difficulties with interpersonal relationships.

At the 2009 hearing, VE Barchi testified that most of Selig's past work had been light and skilled, such as his purchasing position, or light and unskilled, such as his work in auto sales. In answering a hypothetical based on Selig's age and education, and assuming no exertional limitations, he concluded that Selig's past work moving autos would be "doable," as would be a full range of light unskilled work.

## THE ALJ'S DECISION

The ALJ made the following findings.

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.  The claimant has not engaged in substantial gainful activity since September 1, 2005, the alleged onset date.

3.    The claimant has the following severe impairments: bipolar disorder; attention deficit hyperactivity disorder; and history of polysubstance dependence (from alleged onset date to about 2/07).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels with the ability to understand and remember simple instructions, to concentrate for 2 hour periods over an 8 hour day on simple tasks, to interact appropriately with coworkers and supervisors, and to adapt to changes in the work setting.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on June 14, 1958 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2005 through the date of this decision.

12. Although the decision of the Federal Reviewing Official (FedRO) was not considered to be evidence, the undersigned agrees with the conclusion on disability the FedRO made on the Title II and Title XVI claims. However, the undersigned does not agree with all of the substantive findings the FedRO made on these claims.

## DISCUSSION

The decision of the Commissioner is conclusive so long as it is supported by substantial evidence and so long as the Commissioner has applied the correct legal standard. *See* 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam). "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence. . . . [The] question [is] not which side [the court] believe[s] is right, but whether [the Commissioner] had substantial evidentiary grounds for a reasonable decision . . . ." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998) (internal citations omitted). The Commissioner's findings, however, "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

Disability determinations follow a "five-step sequential evaluation process" mandated by 20 C.F.R. § 404.1520. The ALJ must first determine whether or not a claimant was gainfully employed prior to the onset of the disabling condition. Then,

the ALJ must determine whether a claimant suffers from a severe impairment limiting his ability to work. If the impairment is the same as, or equal in its effect to, an impairment (or combination of impairments) listed in Appendix 1 of the regulations, the claimant is presumptively deemed disabled. If the impairment is not covered by Appendix 1, the fourth step of the analysis requires that the claimant prove that his disability is sufficiently serious to preclude a return to his former occupation(s). If he meets that burden, the Commissioner at the fifth step is obligated to prove that there are other jobs in the national economy that the claimant is able to perform. *Gonzalez Perez v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 886, 888 (1st Cir. 1978) ("[A] claimant must establish that he can no longer perform his prior vocation before the government is obligated to prove that alternative employment is available for a person in claimant's condition.").

The ALJ found at Step 1 that Selig has not engaged in substantial gainful activity since September 1, 2005.[3] The ALJ also concluded that Selig had the following severe impairments: bipolar disorder; ADHD; and a history of polysubstance dependence (until February of 2007). At Step 3, however, he determined that these impairments did not meet or medically equal one of the Appendix 1 impairments. He therefore

---

[3] Selig worked after his alleged disability onset date, however, the ALJ determined that work did not rise to the level of substantial gainful activity.

proceeded to Step 4.

Steps 4 and 5 require an assessment of a claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(5). To evaluate the RFC, the ALJ must follow a two-step process to: (1) determine whether the claimant has an underlying physical or mental impairment that could reasonably be expected to produce the complained of pain or other symptoms; and (2) if such an impairment exists, the extent to which it limits his ability to perform basic work activities. This second determination requires an evaluation of the intensity, persistence, and limiting effects of the claimant's pain or other symptoms. *See id.* §§ 404.1545(a)(2)-(3).

The ALJ initially determined that Selig's complaints and medically determinable impairments could reasonably be expected to produce some of his alleged symptoms; however, Selig's statements concerning the intensity, persistence, and limiting effects of these symptoms he did not find credible insofar as they were inconsistent with the RFC. The ALJ also determined that the objective medical evidence did not support Selig's subjective reports of total disability. Although his medical providers had observed episodes of depressed mood, irritability, psychotic behavior, and decreased sleep, "otherwise, [Selig's] mental status examination was reportedly normal." The ALJ also noted Selig's stable diagnosis and compliance with his medication regime, as well as his current state of sobriety. Finally, the ALJ noted that the course of Selig's

treatment over time did not corroborate permanently disabling mental symptoms – Selig had never been hospitalized for depression, nor had he sought specialized treatment expanding on the care he received from Dr. Stockwell, Dr. Weltner, and Nurse Donovan.

While the ALJ considered Selig's moderate restrictions in his daily activities and reports of depressed mood, depression, and irritability, he noted that Selig attends meetings, reads, shops, handles his own bills, volunteers at a senior center, does his own laundry, and maintains sobriety. The ALJ concluded that Selig's social functioning limitations were therefore mild.

In sum, the ALJ found that Selig could perform a full range of unskilled work at all exertional levels, albeit with some nonexertional limitations.

## ISSUE ON APPEAL

On appeal, Selig contends that the ALJ's decision is flawed because he rejected the medical opinions of Dr. Weltner and Nurse Donovan in favor of the opinions of the independent examiner, Dr. Davidson, and to some degree, those of Selig's general care physician, Dr. Stockwell (who appears to have had the most experience treating Selig). Ordinarily, the ALJ is to give "more weight" to treating physicians' opinions, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d)(2). However, the First Circuit "does not require ALJs to give greater weight to the opinions of treating physicians." *Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991) (per curiam), citing *Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 13 (1st Cir. 1982); *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 4 (1st Cir. 1987).

The ALJ determined that the opinions of Dr. Weltner and Nurse Donovan were not only inconsistent with the opinions of Dr. Davidson and Dr. Stockwell, but also inconsistent with the overall objective medical evidence. In that regard, substantial evidence in the record amply supports the ALJ's conclusion. While the ALJ is not to assume the role of a medical professional, he is entitled "to piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). Where a treating physician's opinion is inconsistent with other substantial evidence in the record – or, as is the case here, with the opinions of other treating physicians – the conflict is for the ALJ – and not the court – to resolve. *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

ORDER

Because substantial evidence in the record supports the determination that Selig is not disabled within the meaning of the Social Security Act, the Commissioner's Motion for an Order Affirming the ALJ's Decision is <u>ALLOWED</u>.  Selig's Motion for an Order Reversing or Remanding the Decision of the Commissioner is <u>DENIED</u>.  The Clerk will enter judgment for the Commissioner and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE